IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL ACTION H-15-212 |
| v. | § | |
| | § | CIVIL ACTION H-18-0204 |
| AVERY LAMARR AYERS | § | |

### MEMORANDUM OPINION AND ORDER

Defendant Avery Lamarr Ayers, proceeding *pro se*, filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Docket Entries No. 120, 121). The Government filed a motion for judgment on the record (Docket Entry No. 130), to which Defendant filed a response (Docket Entry No. 134).

Having reviewed the section 2255 motion, the motion for judgment and the response, the record, and the applicable law, the Court GRANTS the motion for judgment, DENIES the section 2255 motion, and DISMISSES this lawsuit for the reasons that follow.

### *Background and Claims*

On June 18, 2015, Defendant pleaded guilty to the charge of conspiracy to commit wire fraud. On September 18, 2015, the Court sentenced him to 60 months' imprisonment in custody of the Federal Bureau of Prisons followed by three years' supervised release. Defendant was also ordered to pay restitution in an amount of $357,000.00. Defendant appealed, arguing that the Court erroneously denied him an adjustment for acceptance of responsibility. The Fifth Circuit Court of Appeals rejected the argument and affirmed the conviction, pointedly remarking that Defendant had "sought to minimize his role and the

duration of his involvement in the fraudulent scheme." *United States v. Ayers*, 669 F. App'x 202, 202 (5th Cir. 2016).

In the instant timely-filed section 2255 motion, Defendant raises the following claims for habeas relief:

1. Trial counsel failed to object to the Government's insufficient factual basis to support a finding of guilt; and

2. Appellate counsel failed to challenge the Government's insufficient factual basis to support a finding of guilt.

The Government argues that these claims are without merit and that the section 2255 motion should be denied.

In his reply, Defendant raised an additional claim, arguing that, under the Supreme Court's recent decision in *McCoy v. Louisiana*, ___U.S.___, 138 S. Ct. 1500 (2018), trial counsel's failure to recognize Defendant's autonomy regarding innocence constituted structural error requiring a new trial. Defendant did not seek leave to supplement his section 2255 motion with this new claim.

### *Legal Standards*

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to section 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the district court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral

attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure, and cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

The pleadings of a *pro se* prisoner litigant are reviewed under a less stringent standard than those drafted by an attorney, and are provided a liberal construction. *Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, a *pro se* litigant is still required to provide sufficient facts to support his claims, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his *pro se* petition . . . to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

### Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id.* at 687. A

failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696.

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Id.* at 695–96.

To show prejudice in the sentencing context, a defendant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under section 2255. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

These same standards apply to counsel's performance on appeal. Defendant must demonstrate that, but for counsel's failure to raise a certain objection or argument on appeal, there is a reasonable probability that the result of the appeal would have been different.

*Analysis*

*Trial Counsel*

Defendant complains that trial counsel failed to object to the Government's insufficient factual basis to support his plea of guilty. He argues that the Government's factual basis, even accepted as true, did not establish the criminal offense charged.

As an initial consideration, the Court notes that Defendant waived this claim by arguing on direct appeal that he had admitted all of the necessary elements of the charged offense. Indeed, the Fifth Circuit stated in its decision that, "Ayers argues that he is entitled to the reduction because he timely pleaded guilty and admitted all of the essential elements of the conspiracy offense." 669 F. App'x at 202. As a result, he may not here take the opposite tack and contend that all of the essential elements of the conspiracy offense were *not* presented and admitted at the plea hearing. His claim warrants no relief.

Regardless, the argument has no merit. The record shows that, during the plea hearing, this Court summarized the elements of the offense of conspiracy as follows:

> Now in order for the Government to prove this charge against you, the Government has to prove the following three things beyond a reasonable doubt with respect to the conspiracy charge: first of all, that you and at least one other person made an agreement to commit the crime of wire fraud as charged in the indictment; second that you knew the unlawful purpose of this agreement and that you joined it willfully, that is, with intent to further the unlawful purpose; and third, that one of the conspirators during the course

of this conspiracy knowingly committed one of the overt acts described in
the information to accomplish some object of the conspiracy.

(Docket Entry No. 60, p. 5). Defendant acknowledged his understanding, and the Court then summarized the substantive elements of wire fraud, the object offense of the conspiracy, as follows:

> Now, the substantive crime of wire fraud requires that the Government prove the following four things: that is, number one, that you knowingly devised or intended to devise a scheme to defraud as charged in the information; second, that the scheme to defraud employed false material representations or false material pretenses or false material promises; third, that you transmitted or caused to be transmitted by way of wire communications in interstate commerce any writing for the purpose of executing such a scheme; and fourth, that you acted with the specific intent to defraud. Those are the substantive elements of the crime of wire fraud.

*Id.*, pp. 5–6. Defendant again acknowledged his understanding. *Id.*, p. 6. The Court asked the prosecutor to summarize the facts that she believed the Government could prove if the case were tried. The prosecutor set forth the following factual basis:

> THE GOVERNMENT: Yes, your Honor. If this case went to trial, the United States would prove beyond a reasonable doubt that on or about January 21st of 2015, co-conspirators circulated a fraudulent invoice to Impact Oil and Gas located in the United Kingdom via e-mail requesting payment in the amount of $357,000 on services rendered by Minas & Hidrocarbonetos.
>
> It was part of the conspiracy that the co-conspirators would use deceptive e-mail accounts to deceive Impact Oil and Gas into believing they were actually the company called Minas. It was further part of the conspiracy that the co-conspirators would and did e-mail Impact Oil and Gas fabricated and illegitimate invoices for payment on services rendered by Minas on something called the AGC project.
>
> One day before, on January 20th of 2015, this Defendant, Avery Ayers, registered in the Harris County clerk's office on January 20th of 2015 a

dummy company doing business as Minas; and then again on the same day, this Defendant, Ayers, opened a Comerica bank account ending in 6718 in the name of Avery Ayers, doing business as Minas & Hidrocarbonetos GB SARL, at a Comerica bank located at 370 Greens Road in Houston, Texas, in which the funds were then deposited.

On or about January 23, 2015, co-conspirators directed Impact Oil and Gas in the United Kingdom to make a $357,000 wire payment into Ayers's Comerica bank account ending in 6718.

On January 20th of 2015, Ayers opened the Comerica bank account 6718 in the name of Avery Ayers, doing business as Minas & Hidrocarbonetos with hundred dollars in United States currency.

The address associated with Avery Ayers was recorded as 55380 West 34th Street, Number 255 located in Houston, Texas. This is a known address for Avery Ayers. There were no further transactions on the account until January 23rd of 2015.

On January 23rd of 2015, a wire in the amount of $357,000 before wire fees was credited to Avery Ayers's account ending in 6718 as mentioned up above. However, the address on the incoming wire was listed with a different address coming from Guinea Bissau and did not match the recorded address that the Defendant, Avery Ayers, opened here in Houston. The wire was credited to the account because of the DBA matching the company that it was supposed to be going to initially.

The transactions that Avery Ayers conducted from this wire were, one, withdrawal of cash in the amount of $9800 in United States currency. He purchased a cashier's check number ending in 4228 in the amount of 9800. He purchased another cashier's check ending in 4229 in the amount of 9800. He purchased another cashier's check ending in 4230 in the amount of 5400. He purchased another cashier's check ending in 4231 in the amount of 2500. He also conducted an inner [sic] bank transfer in the amount of $50,000 into another account ending in 7408 titled Avery Ayers, doing business as Yoseph Pinto. He opened that bank account on January 5th of 2015 at the same banking location.

Comerica bank located at the 370 Greens Road, Houston, Texas, address asked Ayers to provide proof showing that he was actually entitled to the wire. Ayers brought a fictitious letter to them purportedly from the Impact

> Oil and Gas in the United Kingdom which stated, quote, "These funds will be used at your discretion to establish a small office, moving and research expenses, and payouts to families in Texas and Louisiana with gas and oil rights on their property."
>
> Once Comerica realized the wire was a fraud, they notified the HSBC bank that the wire came from. Because Ayers withdrew $50,000 and transferred it into his Yoseph Pinto account, HSBC was unable to recall the wire because the full funds were not available. *Comerica requested Ayers return the funds he withdrew, but he refused.*
>
> The Defendant agrees and stipulates that, while he may not have had knowledge of the entire fraud conspiracy, he did, in fact, commit the overt acts listed above in furtherance of the fraud and deliberately blinded himself to the fraud scheme while accepting the funds that were obtained from fraud.
>
> The total amount Ayers kept was approximately $37,300. Ayers attempted to withdraw the rest of the wire transfer; but due to the fraud alert, the bank froze the funds. Defendant Ayers also agrees that the $357,000 wired into his account occurred due to a fraudulent scheme and that the funds should be returned to the victims, Impact Oil and Gas.

*Id.*, pp. 22-26, emphasis added.

The Court asked Defendant whether the Government's factual statement was true.

The following exchange occurred:

> THE DEFENDANT: Your Honor, the only part that I have a – that I think is not true is where it says "Ayers refused." I did not refuse, sir. It's just that when I spoke with Comerica and I was not understanding what was going on, I wanted to go out and seek legal advice when they sent me the form because the form was not correct that they had sent me.
>
> DEFENSE COUNSEL: Judge, that's in the – on the second page, the second to last paragraph –
>
> THE COURT: Right.
>
> DEFENSE COUNSEL: – is where that sentence comes from.

8

THE COURT: I see.

THE GOVERNMENT: Your Honor, I'm in- I take dispute with the fact that he did not know. That's going to cause issue here with the entire factual basis I just read because I do believe that he did know, and *we do have a witness that would come in here to court and testify that he was asked to return the funds and he said, "Sure, okay" but then they never heard from him. And they attempted several times to contact him to return the money, and he never did.*

And we stand before you today with still the funds that he withdrew still missing. And in fact, he actually made a claim to the money with Homeland Security Investigations. So, I mean, I take dispute with him standing here and saying that he didn't know because that's going to cause issue down the road if he isn't going to fully acknowledge the conspiracy that he was involved in.

DEFENSE COUNSEL: Judge, and the only thing I would say is that clearly I think there's a factual dispute. We had raised this with [the Government] before today that there was a disagreement as to whether that was accurate or not. I don't think that affects whether the factual proffer is sufficient to support all the elements that are necessary for the case or whether the Court can continue to take a plea and we can argue about it at sentencing. It's however the Court wants to handle it.

THE COURT: *All right. Mr. Ayers, so, what you're saying is the bank asked you to return the funds, correct?* Is that right?
THE DEFENDANT: (No response.)

THE COURT: Yes or no?

THE DEFENDANT: *She sent me a letter.*

THE COURT: All right.

THE DEFENDANT: *I'll drop it, your Honor. It's no problem. This is correct. I'll just leave it like it is.*

THE COURT: All right. But I want to make sure that that's accurate. They asked you to return the funds but you have not done that; is that right?

> THE DEFENDANT: The funds were seized, sir.
>
> THE COURT: Okay, that's fine. All right. I think that the proffer, basically, establishes all the elements.

*Id.*, pp. 26–28, emphasis added. The plea hearing continued:

> THE COURT: And so, therefore, the Court is going to find that there's a factual basis for the plea.
>
> So, let me ask you at this time, Mr. Ayers, what is your plea to the charge against you in Count 1 of the superseding criminal information, guilty or not guilty?
>
> THE DEFENDANT: Guilty, your Honor.
>
> THE COURT: Do you state here in court under oath that each and every allegation in Count 1 of the superseding criminal information is true and correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And are you making this plea of guilty to Count 1 freely and voluntarily?
>
> THE DEFENDANT: Yes, sir.

*Id.*, p. 28. The Court accepted Defendant's guilty plea and the case was set for sentencing.

Defendant now argues that counsel should have objected to the Government's factual basis because it did not support the plea. Specifically, he claims that the factual basis did not present evidence of a "specific intent to defraud" on his part for purposes of the conspiracy.

The record clearly shows above that this Court found on the record that the Government presented a factual basis for the conspiracy offense. Consequently, Defendant does not establish that, had counsel raised Defendant's suggested objection, the Court would have granted – or would have reversibly erred in not granting – counsel's objection to the factual basis. No ineffective assistance of counsel under *Strickland* is shown.

Moreover, as shown by the above hearing excerpts, the Government relied on Defendant's "willful blindness" to the transactions and schemes when he became involved in the conspiracy. Indeed, Defendant stipulated that, "while he may not have had knowledge of the entire fraud conspiracy, he did, in fact commit the overt acts listed above in furtherance of the fraud and deliberately blinded himself to the fraud scheme while accepting the funds that were obtained from fraud." (Docket Entry No. 60, p. 25). After initially arguing he was "unaware" of the bank fraud, Defendant subsequently admitted under questioning by the Court that the bank had, indeed, sent him a letter regarding the funds. Defendant immediately withdrew his objection and told the Court, "I'll drop it, your Honor. It's no problem. This is correct. I'll just leave it like it is."

The Court found a sufficient factual basis for the plea, and Defendant acknowledged on the record that each and every allegation in Count One of the superseding criminal information was true and correct. The Court has reviewed the record in light of Defendant's arguments in this proceeding, and again finds that the evidence and factual basis were sufficient to support the plea. Accordingly, Defendant shows no deficient performance by trial counsel. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)

("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *accord United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). Habeas relief is unwarranted.

*Appellate Counsel*

Defendant next complains that appellate counsel was ineffective in failing to challenge the factual basis for the guilty plea. According to Defendant, appellate counsel should have argued that the Government did not present a sufficient factual basis for the conspiracy offense and guilty plea.

The Court has determined here, as it did at the plea hearing, that the evidence and factual basis were sufficient to support the plea. Consequently, appellate counsel was not ineffective for failing to raise meritless arguments. *Clark*, 19 F.3d at 966. Defendant fails to establish deficient performance and actual prejudice under *Strickland*, and habeas relief is unwarranted.

### *McCoy v. Louisiana*

In his response to the Government's motion, Defendant adds a new claim for relief under *McCoy v. Louisiana*, ___U.S.___, 138 S. Ct. 1500 (2018). According to Defendant, defense counsel failed to honor his innocence "autonomy," which was a structural error requiring a new trial.

The Supreme Court decided *McCoy* on May 14, 2018. Defendant in the instant case pleaded guilty on June 18, 2015, nearly three years prior to the *McCoy* decision. *McCoy* was a direct appeal case, and the Supreme Court made no mention of its application to section 2255 proceedings. Thus, to the degree Defendant claims that his plea and conviction are retroactively governed by *McCoy*, his argument lacks support in current Supreme Court and Fifth Circuit authority.

Regardless, *McCoy* examined the inherent tension between a capital murder defendant's insistence on his innocence, and an experienced defense attorney's professional belief that an innocence defense would fail given the overwhelming evidence of guilt. The defendant in *McCoy* explicitly told his lawyer not to concede guilt; the lawyer told the jury in his opening statement that the evidence would reasonably show his client caused the individuals' deaths. 138 S. Ct. at 1506. The Supreme Court concluded that the attorney violated his client's Sixth Amendment rights and held that "a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." *Id.* at 1505. The *McCoy* court noted that some decisions are grounded in a defendant's autonomy, and "are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *Id.* at 1508. If defense counsel overrides his client's autonomy as to these decisions, structural error occurs and a new trial is required.

In the instant case, Defendant's objective was not an innocence defense, but rather, a guilty plea. It became trial counsel's duty to make strategic choices to achieve that objective for Defendant. No competent, probative evidence appears in the record that Defendant instructed counsel to maintain his innocence and forego a plea, or that counsel ignored Defendant's autonomy as to any applicable decision. Thus, *McCoy* does not support Defendant's claim of entitlement to a new trial. Moreover, and as noted above, Defendant himself withdrew the objection he personally raised at the hearing, and agreed on the record that the indictment and factual basis set forth by the Government were true. Defendant waived his objection as to his "joining the conspiracy," pleaded guilty to the indictment, and was ultimately convicted and sentenced. The decision to plead guilty or go to trial was Defendant's decision to make, and he chose to plead guilty. No structural error is shown, and *McCoy* does not rescue Defendant from the consequences of his own decision.

### *Evidentiary Hearing*

No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Here, the record conclusively shows that Defendant is entitled to no relief, and no hearing is required.

*Conclusion*

The Government's motion for judgment on the record (Docket Entry No. 130) is GRANTED. Defendant's section 2255 motion (Docket Entries No. 120, 121) is DENIED, and this case is DISMISSED WITH PREJUDICE. A certificate of appealability is DENIED.

The Clerk of Court is ORDERED to terminate the related civil case in this matter, C.A. No. H-18-0204.

Signed at Houston, Texas on April 22, 2019.

Gray H. Miller
Senior United States District Judge